2021 IL App (1st) 191329-U

No. 1-19-1329

Order filed September 24, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 8815 |
| | ) | |
| D'ANDRE HOWARD, | ) | Honorable |
| | ) | Joseph M. Cataldo, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court properly entered a summary dismissal of defendant's *pro se* postconviction petition where the petition failed to state a claim that he was arguably denied effective assistance of trial counsel.

¶ 2    Defendant D'Andre Howard appeals from the summary dismissal of his *pro se* petition for

relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2018)). On appeal,

defendant contends he raised an arguably meritorious claim that trial counsel was ineffective for

failing to request a fitness hearing and secure the presence of a "key witness" at trial. For the following reasons, we affirm.

¶ 3    The facts of this case are detailed in this court's order on direct appeal. See *People v. Howard*, 2018 IL App (1st) 142401-U. Accordingly, we recount only the facts necessary to resolve the present appeal.

¶ 4    During pretrial proceedings on April 3, 2012 and June 14, 2012, defendant refused to enter the courtroom and counsel asked the court to waive his appearance. Counsel did not state why defendant refused to enter the courtroom on either date.

¶ 5    On January 17, 2013, with defendant present, counsel informed the court that defendant had "cut himself" in jail and was not taking his prescribed medications, Trazodone and Risperdal. Counsel acknowledged that she spoke with defendant, did not have difficulty communicating with him, and he appeared to understand what she said. The court asked defendant whether he understood that he was present for arguments on three motions, and if he was ready and wanted the court to hear the arguments. Defendant responded affirmatively to each question.

¶ 6    On April 3, 2014, counsel asked the court to order that defendant remain at Cook County jail because he had been unavailable to speak with counsel for "many months" due to routine transfers to Livingston County. Counsel indicated that she had hoped to discuss certain issues with defendant, but "based on [his] emotional state," she did not believe she could visit with him that day. She wanted defendant to remain at Cook County jail so they could prepare for trial.

¶ 7    On May 1, 2014, the State filed a motion *in limine* to preclude the defense from presenting an insanity defense or offering expert testimony to negate the required mental state at the time of the incident. The court heard argument on May 6, 2014, and ruled on May 19, 2014.

¶ 8    The court barred defendant from presenting past evidence of his mental health issues, but allowed him to present recent evidence. The court stated it reviewed its notes and transcripts, and acknowledged that defendant was receiving three psychotropic medications, "Trazodone, *** Respidol [*sic*], *** and Lithium." The court noted that "[a]ccording to statute," medications alone do not create a *bona fide* doubt as to a defendant's fitness to stand trial, and after having had "ample" opportunity to observe defendant during numerous proceedings, the court did not have a *bona fide* doubt regarding his fitness. Specifically, the court noted that it observed defendant speaking with counsel before counsel made certain representations during arguments and that it believed from its observations and interactions with defendant that defendant understood the nature of the proceedings and could "clearly assist counsel in his defense." The court asked counsel if she wished to address this point, and counsel responded that "[w]e are not raising an issue of fitness to stand trial at this time."

¶ 9    On May 20, 2014, counsel filed a motion to reschedule defendant's trial, which had been set to begin May 27, 2014. During arguments on May 21, 2014, counsel argued that Dr. Mirella Susnjar, the first doctor to evaluate defendant at the psychiatric unit of Cermak Hospital at the jail, would be unavailable.[1] Counsel stated:

> "When I first spoke with her, she had told me she was unavailable on May the 27th, I did not understand she would not be available the week after that as well. In fact, she's going to be out of the country for a couple of weeks."

---

[1] The record does not contain the motion and attached subpoena. During the May 21, 2014 hearing, the State noted the subpoena to Dr. Susnjar was dated May 7, 2014. The order on direct appeal and the circuit court order dismissing the postconviction petition both stated Dr. Susnjar had been served with a subpoena on May 16, 2014.

¶ 10    Counsel argued that Dr. Susnjar's impressions of defendant would be relevant to his insanity defense. The court denied the motion, noting the matter had been pending for over five years and defense counsel asserted that several other psychiatrists had examined defendant, so it was likely another psychiatrist would be available at trial.

¶ 11    A jury trial commenced May 27, 2014. The evidence showed that on April 17, 2009, defendant stabbed four members of his former fiancée's family; three died from their injuries. Defendant raised the affirmative defense of insanity, and presented several witnesses, including clinical psychologist Dr. Daniel Morjal and psychiatrist Dr. Matthew Mills. Dr. Morjal diagnosed defendant with schizoaffective disorder and cannabis dependency with "rule out" diagnoses of depressive disorder, psychotic disorder, and alcohol abuse, meaning "some information" supported those diagnoses, but "not enough to definitively say that all the criteria is met." Dr. Mills diagnosed cannabis dependency and "cluster B traits" which includes borderline, antisocial, histrionic, and narcissistic personality disorders, with rule out diagnoses of adjustment disorder and alcohol abuse. Defendant testified to his version of the events and his mental state around the time of the incident. The jury found defendant guilty of three counts of first degree murder and one count of attempt first degree murder. After a hearing, the trial court imposed three concurrent natural life terms for murder and a consecutive 60-year term of imprisonment for attempt murder.

¶ 12    On direct appeal, defendant argued (1) he was deprived of his right to present his insanity defense because the trial court barred relevant evidence by denying a motion to continue trial to accommodate Dr. Susnjar's schedule; (2) he was denied a fair trial because the trial court prohibited counsel from asking prospective jurors about their opinion of the insanity defense; and

(3) the State committed misconduct during closing argument. We affirmed. *Howard*, 2018 IL App (1st) 142401-U.

¶ 13 On February 22, 2019, defendant filed a *pro se* postconviction petition raising several claims of ineffective assistance, including, relevant here, that trial counsel failed to investigate defendant's fitness and competency for trial. Defendant noted his psychiatric diagnoses, his psychotropic medications, and his refusal to enter the courtroom due to not taking his medications, along with the fact that defense counsel was unable to consult with him one day due to his "emotional state." Defendant further alleged that counsel was deficient for not securing Dr. Susnjar as a witness, and that had Dr. Susnjar testified, the outcome of the trial could have been different. Defendant attached his affidavit averring that his petition was true and correct.

¶ 14 On May 17, 2019, the circuit court dismissed defendant's petition in a written order, finding the issues frivolous and patently without merit where defendant failed to attach supporting evidence and could have raised the issues on direct appeal. Additionally, defendant's claim that counsel was ineffective for failing to challenge his fitness was contradicted by the trial record where the trial court indicated it lacked a *bona fide* doubt as to his fitness. Further, defendant's assertion that counsel was ineffective for failing to secure Dr. Susnjar's testimony was also contradicted because counsel had subpoenaed Dr. Susnjar and sought a continuance. The circuit court noted that this court held on direct appeal that the trial court's decision to deny the continuance was not an abuse of discretion. Moreover, the allegations failed to establish that counsel's representation fell below an objective standard of reasonableness or that a reasonable probability existed that, but for counsel's errors, the result of the trial would have been different.

¶ 15 On appeal, defendant argues the circuit court erred in summarily dismissing his postconviction petition where he raised an arguable claim that trial counsel was ineffective for failing to request a fitness hearing and to secure Dr. Susnjar's presence at trial.

¶ 16 The Act provides a three-stage mechanism by which defendants may collaterally challenge their convictions for violations of federal or state constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2018); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). At the first stage of proceedings, the circuit court must independently review the petition, taking the allegations as true, and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is frivolous or patently without merit if it has no arguable basis in law or fact and is instead based on a meritless legal theory or fanciful factual allegations. *People v. Hodges*, 234 Ill. 2d 1, 11-13, 16 (2009). A meritless legal theory is one that is completely contradicted by the record. *People v. White*, 2014 IL App (1st) 130007, ¶ 18. Fanciful factual allegations "include those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 17.

¶ 17 The petition need only present a limited amount of detail and need not set forth the claim in its entirety. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). Although a *pro se* petitioner need only set forth the gist of a constitutional claim, this low threshold does not excuse the petitioner from providing any factual detail at all regarding the alleged constitutional violation. *Hodges*, 234 Ill. 2d at 10. " '[W]hile a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent. " *Id.* at 9 (quoting *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008)). In determining whether a petition presents a valid claim for relief,

"the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding," as well as any affidavits, records, or other evidence supporting the allegations. 725 ILCS 5/122-2.1(c) (West 2018); 725 ILCS 5/122-2 (West 2018). Unsupported allegations in a postconviction petition are frivolous and patently without merit. *People v. Collins*, 202 Ill. 2d 59, 68-69 (2002). Our review of the summary dismissal of defendant's petition is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 18    To state a claim of ineffective assistance of counsel in first stage postconviction proceedings, a defendant must demonstrate it is arguable that (1) counsel's performance "fell below an objective standard of reasonableness" and (2) the defendant was prejudiced by counsel's deficient performance. *Id.* at 17 (citing *Strickland v. Washington*, 466 U.S. 668, 678-88 (1984)). More specifically, a defendant must show that it is arguable "counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland*, 466 U.S. at 694). If the defendant fails to show he was arguably prejudiced by his counsel's performance, then we can dispose of the ineffective assistance claim on that basis alone. *People v. Wilson*, 2014 IL App (1st) 113570, ¶ 46.

¶ 19    Defendant first claims that his postconviction petition raised an arguable claim that trial counsel was ineffective for failing to request a fitness hearing.

¶ 20    The prosecution of a defendant who is unfit for trial violates due process. *People v. Easley*, 192 Ill. 2d 307, 318 (2000). A defendant is presumed fit, and is unfit where he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense because

of his mental or physical condition. 725 ILCS 5/104-10 (West 2008). The trial court must order a fitness hearing if a *bona fide* doubt is raised regarding a defendant's fitness. 725 ILCS 5/104-11(a) (West 2008).

¶ 21    Administration of psychotropic medications does not alone raise a *bona fide* doubt of a defendant's fitness. *People v. Brown*, 236 Ill. 2d 175, 187 (2010) (citing *People v. Mitchell*, 189 Ill. 2d 312, 331 (2000)). Additionally, the fact that a defendant suffers from a mental impairment does not necessarily mean that he is unfit for trial. *People v. Easley*, 192 Ill. 2d 307, 322-323 (2000). A number of factors may be considered in assessing whether a *bona fide* doubt of fitness exists, "including a defendant's irrational behavior, demeanor at trial, any prior medical opinion on the defendant's competence, and any representations by defense counsel on defendant's competence." *Brown*, 236 Ill. 2d at 186-187. The issue is whether a defendant could understand the proceedings against him and cooperate with defense counsel. *Easley*, 192 Ill. 2d at 323. "At the first stage [of postconviction proceedings], this means that, in order to establish arguable prejudice, defendant must point to facts that would have arguably raised a *bona fide* doubt of his fitness." *People v. Castellano*, 2020 IL App (1st) 170543, ¶ 45.

¶ 22    Initially, we note defendant's appellate brief references details from his Cermak Hospital medical records, including Dr. Susnjar's post-arrest psychiatric evaluation, but he did not attach any medical records to his postconviction petition. The parties' briefs indicate these records were before the trial court; however, the record does not show that the materials were before the circuit court when it ruled on the petition. Consequently, we cannot consider them for the first time on appeal. See, *e.g.*, *People v. Garcia*, 2017 IL App (1st) 133398, ¶ 35 ("[T]his court cannot consider evidence that is not part of the record.").

¶ 23    Turning to the merits, defendant's petition does not allege that mental illness or psychotropic medications interfered with his ability to understand the proceedings and assist in his defense. Nor does it contain any facts from which that conclusion could be gleaned. The petition merely describes defendant's mental illnesses and medications, and cites to instances when he refused to enter the courtroom due to not taking his medications and when counsel was unable to confer with him due to his "emotional state" one day. The petition also notes one instance where counsel informed the court that defendant had harmed himself due to not taking his medications. Taking defendant's claims as true, these facts do not establish that he could not understand the proceedings and assist in his defense. See *Easley*, 192 Ill. 2d at 323. Indeed, prior to trial, the court noted defendant had been prescribed psychotropic medications, but also that the court believed from its observations and interactions with defendant that he understood the nature of the proceedings and could assist counsel in his defense. Counsel then informed the court she was not raising a *bona fide* doubt as to his fitness. The allegations in defendant's petition therefore do not establish facts which would have arguably raised a *bona fide* doubt as to his fitness. See *Castellano*, 2020 IL App (1st) 170543, ¶ 45.

¶ 24    Nor do we find defendant's reliance upon *People v. Brown*, 236 Ill. 2d 175 (2010), persuasive. In *Brown*, the defendant alleged in his postconviction petition that counsel was ineffective for failing to request a fitness hearing where he was unable to understand the events at trial because he had been taking "very heavy" psychotropic medication. *Brown*, 236 Ill. 2d at 185-186. Additionally, the defendant attached medical records and affidavits supporting his factual allegations, including attestations from his mother and aunt regarding his mental state. *Id.* at 186. The court found the record did not completely contradict defendant's legal theory, and taking his

allegations as true, his petition raised an arguable claim of ineffective assistance of counsel for failing to request a fitness hearing. *Id.* at 191.

¶ 25    Here, defendant did not aver that he did not understand the proceedings, but merely identified his diagnoses, prescribed medication, and several isolated events from pretrial proceedings as evidence of his unfitness. As noted, however, neither a diagnosis of a mental impairment (see *Easley*, 192 Ill. 2d at 322-323) nor administration of medications (see *Brown*, 236 Ill. 2d at 187) alone establish a *bona fide* doubt as to defendant's fitness. The court specifically informed defendant that it had observed him prior to trial and believed he understood the nature of the proceedings and could assist in his defense. At trial, defendant actively participated by testifying at length. See *Castellano*, 2020 IL App (1st) 170543, ¶ 59 (distinguishing *Brown* in part because the defendant testified in his own defense and was cross-examined extensively, whereas the defendant in *Brown* waived his right to testify). Further, defendant did not attach affidavits or medical records supporting the allegation in his petition or explain why this evidence was not attached. See *Hodges*, 234 Ill. 2d at 10 (the purpose of attaching affidavits, records, or other evidence is to establish that a defendant's allegations are capable of objective or independent corroboration). Accordingly, defendant has not stated the gist of a constitutional claim that trial counsel was ineffective for failing to request a fitness hearing.

¶ 26    Defendant next claims that his postconviction petition raised an arguable claim that trial counsel was ineffective for failing to secure Dr. Susnjar's presence at trial. Specifically, defendant alleges that counsel mistakenly subpoenaed Dr. Susnjar for an incorrect date, not realizing she would be out of the country, an error which deprived defendant of a "key witness" at trial.

¶ 27    We note at the outset that counsel filed a motion to continue trial in order to secure Dr. Susnjar's testimony, which the trial court denied. On direct appeal, defendant argued the court abused its discretion in denying the continuance. We found no abuse of discretion because the court considered counsel's lack of diligence in securing a witness for the agreed trial date in a case which had been pending for five years. *Howard*, 2018 IL App (1st) 142401-U, ¶ 103. Therefore, although defendant presently argues that counsel was ineffective for failing to secure Dr. Susnjar's presence at trial, he has already litigated a challenge to the trial court's discretionary ruling to deny a continuance for that purpose. To the extent defendant's ineffective assistance claim relies on the same facts predicating the claim raised on direct appeal, it is barred by *res judicata*. See *People v. Viramontes*, 2016 IL App (1st) 160984, ¶ 65 ("[A] petitioner cannot obtain relief simply by rephrasing previously addressed issues in constitutional terms in his or her petition." (internal quotation marks omitted)).

¶ 28    Generally, decisions regarding whether to call certain witnesses on a defendant's behalf are matters of trial strategy, reserved to trial counsel's discretion. *People v. Enis*, 194 Ill. 2d 361, 378 (2000). However, we do not consider arguments related to trial strategy when reviewing first-stage postconviction petitions. See *People v. Tate*, 2012 IL 112214, ¶ 22. Nevertheless, taking a defendant's allegations as true, if he raised an arguable claim defense counsel's performance was objectively unreasonable under prevailing norms, he would still need to show he was arguably prejudiced by the deficient performance. *Id.* ¶ 19. A defendant is arguably prejudiced by his counsel's failure to call a witness where the testimony could have led to a different outcome at trial. See *id.* ¶ 24.

¶ 29    Here, even accepting that defendant's allegation is not barred by *res judicata*, defendant was not prejudiced by counsel's failure to secure Dr. Susnjar as a witness because it is not arguable her testimony would have led to a different result at trial. As noted, defendant did not attach Dr. Susnjar's notes to his petition, and the medical records which defendant cites in his appellate brief were not before the circuit court. Defendant claims that Dr. Susnjar's testimony was critical because she was the first psychiatrist to assess him, and therefore the best "qualified" to provide an opinion in support of the insanity defense. Defendant provides no support for this supposition, however, and merely speculates that her testimony would have affected the outcome of the trial. See *People v Pecoraro*, 175 Ill. 2d 294, 324 (1997) ("A defendant cannot rely on speculation or conjecture to justify his claim of incompetent representation."). At trial, defendant presented a clinical psychologist and psychiatrist who both evaluated him shortly after the incident. They presented evidence of their diagnoses and impressions of defendant to the jury. Defendant also testified extensively regarding his version of events. On direct appeal, this court noted that the evidence at trial was "overwhelming" regarding defendant's ability to appreciate the criminality of his conduct. *Howard*, 2018 IL App (1st) 142401-U, ¶ 116. We find counsel's failure to secure Dr. Susnjar as an expert witness did not prejudice defendant and, accordingly, the circuit court did not err in dismissing this claim at the first stage of proceedings.

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31    Affirmed.