2023 IL App (1st) 220483-U

FIRST DISTRICT,
FIRST DIVISION
May 30, 2023

No. 1-22-0483

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 09 CR 08815 |
| D'ANDRE HOWARD, | ) ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) ) | Marc W. Martin, Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1   *Held*:   The circuit court properly denied defendant's motion for leave to file a successive postconviction petition where he failed to establish cause for failing to bring his proportionate penalties claim in his initial postconviction petition.

¶ 2   Following a jury trial, defendant D'Andre Howard was convicted of three counts of first degree murder and one count of attempt first degree murder. Defendant was sentenced to three concurrent natural life sentences for first degree murder consecutive to 60 years' imprisonment for attempt first degree murder. Defendant's convictions were affirmed on direct appeal. *People v. Howard*, 2018 IL App (1st) 142401-U, ¶ 2. The denial of defendant's initial postconviction

petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) was also affirmed on appeal. *People v. Howard*, 2021 IL App (1st) 191329-U, ¶ 2.

¶ 3 Defendant sought leave to file a successive postconviction petition, challenging his sentences under the eighth amendment to the United States Constitution (U.S. Const. Amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11). The circuit court denied defendant's motion for leave to file a successive postconviction petition. We affirm.

¶ 4                                    BACKGROUND

¶ 5 Defendant was convicted of first degree murder of Alan Engelhardt, Laura Engelhardt, and Marlene Gacek, and attempt first degree murder of Shelly Engelhardt. The facts of this case are fully set forth in this court's order on direct appeal. See *Howard*, 2018 IL App (1st) 142401-U, ¶¶ 20-68. We recount only the facts necessary to resolve the instant appeal.

¶ 6 The evidence at trial showed that on April 17, 2009, defendant stabbed four family members of his then-fiancée, Amanda Engelhardt: her father, Alan; her mother, Shelly; her sister, Laura; and her grandmother, Marlene. At the time of these offenses, defendant and Amanda were living together in an apartment with their baby daughter. After arguing throughout the day on April 16, 2009, defendant called Amanda's parents and told them to come and get her. Shortly thereafter, Amanda, her parents, and the baby returned to the Engelhardt's house. Defendant later arrived at the house to talk to Amanda, and they agreed to separate. Amanda told defendant she was tired, and he agreed to let himself out and go home.

¶ 7 Amanda later awoke to defendant holding a kitchen knife to her throat. Defendant led her to the den, where Shelly was knitting. Defendant tied Amanda and Shelly together around their chests, wrists, and necks and went upstairs. He came back to the den with Laura and "[h]ogtied"

her. When defendant untied Laura, she grabbed the knife and stabbed him in the arm. As they struggled over the knife, defendant stabbed Laura multiple times. He also stabbed Shelly (who was still tied up) and Marlene and Alan (who had come downstairs to see what was happening). Laura, Marlene, and Alan died from the injuries inflicted by defendant.

¶ 8        At trial, defendant raised the affirmative defense of insanity, presented the testimony of various mental health professionals, and testified concerning his mental state leading up to, and during, the attacks. The jury found defendant guilty of the murders of Laura, Marlene, and Alan, and the attempt murder of Shelly.

¶ 9        The presentence investigation report (PSI) reflected that defendant was 20 years and 11 months old at the time of the crimes.[1] At defendant's July 9, 2014 sentencing hearing, the State introduced the victim impact statements of Shelly and her son, Jeff Engelhardt. In mitigation, defense counsel presented a 90-page "sentencing packet," which included information concerning defendant's history of placements within the Illinois Department of Children and Family Services (DCFS) and interviews with various acquaintances of defendant. Counsel argued that "the mitigation on behalf of [defendant] is overwhelming," based on defendant's history of mental illness, abuse, neglect, trauma, and DCFS involvement.

¶ 10        After considering the victim impact statements, the statutory factors in aggravation and mitigation, the PSI, and the "sentencing packet of materials presented by the defense," the trial court found that "none" of the statutory factors in mitigation were applicable. The court imposed three mandatory concurrent natural life terms for each murder (see 730 ILCS 5/5-8-1 (c) (ii) (West 2014)) and a consecutive 60-year sentence for attempt murder. The court found that defendant's conduct caused serious harm and that a maximum extended term sentence was

_____

[1] Defendant "refused to answer any questions" when interviewed for the PSI.

"necessary to deter others from committing the same crime." See 730 ILCS 5/5-8-4(d) (1); 730 ILCS 5/5-5-3.2(1), (7) (West 2014). Defendant's motion to reconsider sentence alleged that the trial court "erred in failing to give adequate consideration to mitigating factors, such as the defendant's history of abuse, neglect, and mental illness, his history as a ward of DCFS, [and] his history of foster care placements." The trial court denied the motion. The judgment of the circuit court was affirmed on direct appeal. *Howard*, 2018 IL App (1st) 142401-U, ¶ 2.

¶ 11        On February 22, 2019, defendant filed a *pro se* petition for postconviction relief, arguing that trial counsel was ineffective for failing to investigate defendant's fitness and competency for trial and for failing to present expert testimony to support his insanity defense. This court affirmed the judgment of the circuit court summarily dismissing the petition. *Howard*, 2021 IL App (1st) 191329-U, ¶ 2.

¶ 12        On December 8, 2021, defendant filed a motion for leave to file a successive postconviction petition. Defendant argued that his sentence violated the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution. Although he was 20 years and 11 months old when the crimes were committed, he claimed that he was "the functional equivalent of a juvenile" due to his "youth[,] *** mental health issues, lack of proper childhood development, and trauma." A report prepared by developmental psychologist Dr. James Garbarino on November 17, 2021 was attached to defendant's petition. Defendant asserted that the report constituted "newly discovered evidence" that defendant's development "could have influenced [his] actions" in committing the crimes.

¶ 13        In denying leave to file the successive petition, the circuit court held that *Miller* claims "do not apply to defendants over the age of 18 at the time of the offense" and that defendant was unable to establish cause for his proportionate penalties claim based on *People v. Dorsey*, 2021 IL 123010.

See *id.* ¶ 74 (holding that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause"). The court found that "the original sentencing and the direct appeal in this case occurred after Miller," but defendant failed to raise his claim on direct appeal or in his initial postconviction petition. The court also found that Dr. Garbarino's report is not "new" evidence because "the evidence upon which it was based was available at the time of the original sentencing" and was presented in mitigation.

¶ 14                                                   ANALYSIS

¶ 15        The Act provides a remedy for criminal defendants whose federal or state constitutional rights were substantially violated at trial or sentencing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). The Act contemplates the filing of only one postconviction petition without leave of court. *People v. Bailey*, 2017 IL 121450, ¶ 35; 725 ILCS 5/122-1(f) (West 2020). While successive postconviction petitions are "highly disfavored" (*Bailey*, 2017 IL 121450, ¶ 39), leave of court may be granted if a defendant shows both "cause" and "prejudice." (725 ILCS 5/122-1(f)). "Cause" is "an objective factor that impeded [the defendant's] *** ability to raise a specific claim" during his initial postconviction proceedings. 725 ILCS 5/122-1(f). "Prejudice" is established when the claim not raised "so infected the trial that the resulting conviction or sentence violated due process." *Id.* A defendant must make a *prima facie* showing of cause and prejudice. *Bailey*, 2017 IL 121450, ¶ 24. We review the denial of defendant's motion for leave to file a successive postconviction petition *de novo*. *Id.* ¶ 13.

¶ 16        Defendant's proportionate penalties claim is premised on the principles adopted in *Miller v. Alabama*, 567 U.S. 460 (2012). In *Miller*, the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's

prohibition on 'cruel and unusual punishments.' "*Miller*, 567 U.S. at 465. Under *Miller*, the sentencing court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

¶ 17    Although *Miller* only applies directly to those under the age of 18 at the time of the offense (see *People v. Harris*, 2018 IL 121932, ¶ 58), our supreme court has held that "[b]y way of the proportionate penalties clause, *** young adults may rely on the evolving neuroscience and societal standards underlying the rule in *Miller* to support an as-applied challenge to a life sentence" under the Act. *People v. Walker*, 2022 IL App (1st) 201151, ¶ 27; see *People v. Thompson*, 2015 IL 118151, ¶ 44; see also *Harris*, 2018 IL 121932, ¶ 48. The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. A sentence violates the proportionate penalties clause if it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002).

¶ 18    Defendant argues that he established cause for failing to bring his proportionate penalties claim in his initial postconviction petition because "science and case law dealing with the still-developing brains of emerging adults is new and evolving and thus it is proper to bring such claims now." However, the "science and case law" upon which defendant relies had already evolved by 2019, when defendant's initial postconviction petition was filed. See *Miller*, 567 U.S. at 465; *Thompson*, 2015 IL 118151, ¶ 44 (recognizing that a 19-year-old defendant is "not necessarily foreclosed" from raising as-applied challenge to sentence under the Act); *Harris*, 2018 IL 121932, ¶ 48 (18-year-old defendant's as-applied claim could be raised in a separate proceeding under the Act).

¶ 19    Regardless, based on *People v. Dorsey*, 2021 IL 123010, ¶ 74, the unavailability of *Miller* and its progeny does not provide defendants with cause to raise a claim under the proportionate penalties clause. In *Dorsey*, our supreme court reiterated that "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing." *Id.* The unavailability of *Miller* "at best deprived defendant 'of some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.*

¶ 20    Defendant's argument that *Dorsey*'s holding does "not apply to emerging adult cases" (because the defendant in *Dorsey* was a juvenile at the time of the crime) is foreclosed by our supreme court's recent decisions in *People v. Clark*, 2023 IL 127273, ¶¶ 92-93, and *People v. Moore*, 2023 IL 126461, ¶ 42.[2] In *Clark*, 2023 IL 127273, ¶¶ 26, 93, the defendant sought leave to file an as-applied proportionate penalties claim challenging his 90-year *de facto* life sentence for a crime he committed at the age of 24. The court held that defendant failed to show cause, reaffirming its holding "in *Dorsey* that '*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause' in a successive postconviction petition." *Id.* ¶ 92.

¶ 21    The *Clark* court found that the "same reasoning" in *Dorsey* applied to the 24-year-old defendant because, "[a]s is the case with juvenile offenders, Illinois courts were also aware that 'less than mature age can extend into young adulthood—and they have insisted that sentences take into account that reality of human development.' " *Id.* ¶ 93 (quoting *People v. Haines*, 2021 IL App (4th) 190612, ¶ 47 (citing *People v. Maldonado*, 240 Ill. App. 3d (1992); *People v. Center*, 198 Ill. App. 3d 1025 (1990); *People v. Adams*, 8 Ill. App. 3d 9 (1972))). Since "*Miller*

___

[2] *People v. Clark*, 2023 IL 127273 and *People v. Moore*, 2023 IL 126461 were decided after this case was fully briefed.

does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders," defendant " 'had the essential legal tools to raise his present proposed claim under the proportionate penalties clause' when he filed his previous postconviction petitions.' " *Id.* (quoting *Haines*, 2021 IL App (4th) 190612, ¶ 49).

¶ 22 Our supreme court reiterated these principles in *Moore*, 2023 IL 126461, ¶¶ 40-42. There, the court consolidated the appeals of two defendants, Moore and Williams. Both defendants sought leave to file successive postconviction petitions, raising as-applied proportionate penalties challenges to their discretionary natural life sentences for murders they committed when they were 19 years old. *Id.* ¶¶ 1, 15, 25. The court found that the "evidence and argument raised at the sentencing hearings for both Moore and Williams show the parties knew Illinois law recognized the special status of young adults, especially those subject to adverse influences, for purposes of applying the principles of the proportionate penalties clause." *Id.* ¶ 42. Relying on *Clark*, the court held that because "*Miller* did not change the law applicable to young adults, it does not provide cause for the proportionate penalties challenges advanced" in defendants' proposed successive postconviction petitions. *Id.*

¶ 23 Consistent with *Clark* and *Moore*, this court has repeatedly applied *Dorsey*'s holding to young adult offenders. See, *e.g.*, *Walker*, 2022 IL App (1st) 201151, ¶ 29 (it follows that "our supreme court's recent acceptance that *Miller* may apply to young adults in certain circumstances does not provide cause for a young adult's successive petition either"); *People v. French*, 2022 IL App (1st) 220122, ¶ 29 (rejecting defendant's argument that *Dorsey*'s holding did not apply to young adult defendants); *People v. Walsh*, 2022 IL App (1st) 210786, ¶ 33 (where "cause has been fully litigated *** , this court has universally applied the holding in *Dorsey* to conclude that cause has not been established based on the prior unavailability of *Miller*

and its progeny"). Based on *Dorsey*, *Clark*, and *Moore*, defendant is unable to establish cause for failing to raise his proportionate penalties claim in his initial postconviction petition.

¶ 24    Defendant further asserts that "Dr. Garbarino's report constituted cause to bring this claim now," claiming that it would have been "unfair" to require him to obtain an expert report "within 18 months of *Harris* being issued" (*i.e.*, when his initial postconviction petition was due). We disagree.

¶ 25    In 2015, our supreme court recognized that a 19-year-old defendant could raise an as-applied constitutional challenge to his sentence under the Act. See *Thompson*, 2015 IL 118151, ¶ 44. And "while the more recent caselaw certainly adds to defendant's argument, his proportionate penalties claim was 'buildable' " prior to *Harris*, *Thompson*, and even *Miller*. See *French*, 2022 IL App (1st) 220122, ¶ 31 (citing *Haines*, 2021 IL App (4th) 180612, ¶ 56); see also *People v. Guerrero*, 2012 IL 112020, ¶ 20 ("the lack of precedent for a position differs from 'cause' for failing to raise an issue, even when the law is against him, in order to preserve it for review"). Here, defendant provides no "objective factor" that prevented him from presenting his proportionate penalties claim in his initial petition. See *French*, 2022 IL App (1st) 220122, ¶ 33 (because defendant's claim was "buildable" prior to *Miller* and *Thompson*, he had "ample time to summon the evidentiary support to raise his proportionate penalties claim").

¶ 26    Finally, relying on *People v. Blalock*, 2022 IL 126682, defendant argues that the circuit court erred "in reasoning that because mitigation evidence was adduced at the original sentencing hearing, Dr. Garbarino's report was not in fact 'new.' " In *Blalock*, the court held that defendant established cause for bringing a coerced confession claim where he presented new evidence of a pattern and practice of police misconduct. *Id.* ¶¶ 30, 45-46. In contrast, defendant is relying on the same mitigation evidence presented at the original sentencing hearing. It follows

that he " 'had the essential legal tools to raise his present proposed claim under the proportionate penalties clause' " when he filed his initial postconviction petition. See *Clark*, 2023 IL 127273, ¶ 93 (quoting *Haines*, 2021 IL App (4th) 190612, ¶ 49).

¶ 27    Because defendant has failed to establish cause, we need not address whether he has made a *prima facie* showing of prejudice. See *People v. Brown*, 225 Ill. 2d 188, 207 (2007).

¶ 28                                   CONCLUSION

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30    Affirmed.

¶ 31    JUSTICE PUCINSKI, specially concurring:

¶ 32    I agree with the majority based on the facts of this case, which was the result of three brutal murders and one horrible attempt murder.  No one can minimize the terrible effect of these crimes, particularly on the child left behind.

¶ 33    However, the science of emerging adults is real and reliable.  I urge the legislature to consider separate guidelines for juveniles, emerging adults and adults. These are three separate and distinct classes based on a combination of age, maturity, impulsivity, and other factors which should all be considered in determining intent, a necessary element in felonies, and considered in our state's sentencing guidelines.