2024 IL App (1st) 220587-U

No. 1-22-0587

Order filed June 20, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 01 CR 24718 |
| STANLEY MILLER, | ) ) | Honorable Adrienne E. Davis, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Martin and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's denial of defendant's motion for leave to file a successive postconviction petition, where defendant failed to show cause for not raising his proportionate penalties claim in an earlier collateral proceeding.

¶ 2    Defendant Stanley Miller appeals the denial of his *pro se* motion for leave to file a successive postconviction petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), challenging his sentence. On appeal, he argues that leave to

file should have been allowed because, as an emerging adult, his *de facto* life sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). We affirm.

¶ 3     Defendant and codefendants Francisco Guerrero, Roger Sharkey, and Felix Delgado were charged by indictment with 12 counts of first degree murder, premised on an incident in Chicago on September 7, 2001. Following a 2003 jury trial, defendant was found guilty of first degree murder and sentenced to 85 years in prison. We affirmed on direct appeal. *People v. Miller*, No. 1-04-0650 (2006) (unpublished order under Illinois Supreme Court Rule 23).

¶ 4     The trial evidence showed that defendant and the codefendants were members of the Satan Disciples street gang. Sharkey testified that he and other Satan Disciples planned to shoot at members of a rival street gang, Latin Souls, who had been in their territory. Other individuals testified that, on September 7, 2001, at about 9:30 p.m., defendant, Sharkey, Delgado, Guerrero, and a few other people drove a caravan of vehicles to the 4900 block of South Paulina Street. Yolanda Castillo and her family were talking on the front porch of a residence on that block. While inside one of the vehicles in the caravan, defendant removed a firearm from his sock and fired at the family through a window of the vehicle, striking and killing Castillo. The State published a video-recorded statement that defendant gave to detectives confessing that he was a Satan Disciple and that he shot into the crowd of people.

¶ 5     The jury found defendant guilty of first degree murder and that, during the commission of the offense, defendant personally discharged a firearm that proximately caused Castillo's death.

¶ 6     The evidence at sentencing showed that defendant was 20 years old at the time of the offense. Defendant had previously received probation for possession of a stolen motor vehicle, and the probation was terminated satisfactorily. He had no prior adult convictions. Defense counsel

argued that defendant became involved with the Satan Disciples because they sold cannabis and defendant had a "problem" with narcotics and alcohol abuse. Counsel asserted that defendant had not planned the shooting, and the Satan Disciples were "testing" defendant as part of the initiation to prove he was worthy to be with them, but he was "not on the same level with them."

¶ 7     The trial court sentenced defendant to 85 years in prison, consisting of a discretionary 60-year sentence for first degree murder (730 ILCS 5/5-4.5-20(a) (West 2000) (first degree murder subject to 20-to-60-year range)) and a mandatory 25-year enhancement for discharging a firearm that proximately caused death to another person (730 ILCS 5/5-8-1(d)(iii) (West 2000)). The court stated it had considered the goals of sentencing, including the goals of rehabilitation, retribution, and deterrence. The court  stated it intended to send a deterring message to the "general community" and to defendant individually, to keep defendant incarcerated "for a long enough period of time so that he will never be in a position to commit a crime against another human being." The court remarked it was "bad enough" when gang members commit crimes against each other, but "innocent people" are also the victims of gang violence. The court stated that it "may well be that [defendant] was [n]ew to this gang situation" and was "put through some type of a test," but he "passed the test." The court found that the offense was perpetrated in furtherance of the activities of an organized gang.

¶ 8     We affirmed the conviction and sentence on direct appeal over defendant's contention that the trial court failed to consider his rehabilitative potential. *Miller*, No. 1-04-0650 (2006) (unpublished order under Illinois Supreme Court Rule 23).

¶ 9     On February 7, 2007, defendant filed a *pro se* postconviction petition, raising claims of ineffective assistance of trial and appellate counsel and abuse of discretion by the trial court for

- 3 -

unduly aiding the jury during deliberations. The circuit court summarily dismissed the petition. We granted counsel leave to withdraw and affirmed. *People v. Miller*, No. 1-07-1091 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10    Defendant then filed a number of unsuccessful *pro se* motions for leave to file a successive postconviction petition. Defendant did not appeal the denial of these motions.

¶ 11    On May 25, 2021, defendant filed the *pro se* motion for leave to file another successive postconviction petition now at issue. Citing the protections for juvenile offenders set forth in *Miller v. Alabama*, 867 U.S. 460 (2012), and its progeny, defendant alleged that his *de facto* life sentence of 85 years in prison violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him, an "emerging adult" who was 20 years old at the time of the offense. He challenged his "mandatory gun enhancement sentencing scheme" and asserted that mandatory life sentences were unconstitutional under *Miller*. According to defendant, his "mandatory" *de facto* life sentence precluded consideration of his youth and attendant characteristics.

¶ 12    Citing *People v. Buffer*, 2019 IL 122327, defendant argued that "a defendant adequately establishes cause and prejudice when they raise a '*MILLER*' Style post-conviction claim." He contended that he had cause for not raising his claim earlier because Illinois courts had only recently extended the protections of *Miller* to *de facto* life sentences and emerging adult defendants. He asserted that he was prejudiced because the trial court's "only intent was for retribution and deter[r]ence," and it did not consider defendant's rehabilitative potential.

¶ 13    On December 2, 2021, the circuit court denied defendant leave to file a successive postconviction petition. The court noted that defendant failed to sign his motion or support his

postconviction claim with affidavits or sworn verification as required by the Act. These deficiencies notwithstanding, the court also found that the eighth amendment protections set forth in *Miller* and its progeny did not apply to defendant because he was not a juvenile offender. The court further found that defendant failed to set forth any facts that would establish he was "functionally younger than his chronological age" so that he, as a 20-year-old offender, could raise an as-applied *Miller*-type challenge based on the proportionate penalties clause. We granted defendant leave to file a late notice of appeal, and this appeal follows.

¶ 14    As an initial matter, we note that on May 17, 2022, while this appeal was pending, defendant filed in the circuit court a copy of an August 20, 2021, notice of filing for an August 18, 2021, case disposition by the Illinois Torture Inquiry and Relief Commission (TIRC). The TIRC case disposition reflects that defendant filed a claim with TIRC in 2011 and another in 2016 wherein he asserted his videotaped confession was the direct result of sustained physical and emotional abuse by police detectives while he was in police custody. The TIRC found "sufficient evidence of torture to merit judicial review" and referred defendant's claims to the chief judge of the Circuit Court of Cook County requesting that the claims be assigned to a circuit court judge for consideration. The circuit court's records reflect that the TIRC claim was assigned to a judge on May 24, 2022, and defendant was appointed counsel. As of today's date, the claims remain pending in the circuit court. This appeal does not involve the TIRC claims.

¶ 15    On appeal here, defendant asserts that the circuit court erred in denying him leave to file a successive postconviction petition. He contends he made a *prima facie* showing of cause and prejudice because, as a 20-year-old offender, he received a statutorily mandated *de facto* life

sentence in violation of the proportionate penalties clause of the Illinois Constitution, as applied to him.

¶ 16    The Act provides a three-stage method for persons under criminal sentence to "assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009).The Act generally contemplates the filing of only one postconviction petition, and any claim of a substantial denial of constitutional rights not raised in the original or an amended petition is waived. *People v. Orange*, 195 Ill. 2d 437, 449 (2001); 725 ILCS 5/122-3 (West 2020). A ruling on an initial postconviction petition has *res judicata* effect "with respect to all claims that were raised or could have been raised on the initial petition." *Orange*, 195 Ill. 2d at 449. However, the procedural bar against successive proceedings will be relaxed on either of two grounds: (1) "where the petitioner can establish cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding"; or (2) "where the petitioner asserts a fundamental miscarriage of justice based on actual innocence." *People v. Robinson*, 2020 IL 123849, ¶ 42. Here, defendant asserts he satisfied the cause-and-prejudice test.

¶ 17    The cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous and patently without merit standard applied to an initial postconviction petition. *People v. Smith*, 2014 IL 115946, ¶ 35. The defendant must establish "cause" "by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f)(1) (West 2020). The defendant establishes "prejudice" "by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due

process." 725 ILCS 5/122-1(f)(2) (West 2020). Both elements of the cause-and-prejudice test must be met to overcome the bar against successive pleadings. *People v. Clark*, 2023 IL 127273, ¶ 47. The circuit court should deny leave to file a successive petition "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35. We review *de novo* the denial of a motion for leave to file a successive postconviction petition. *People v. Lusby*, 2020 IL 124046, ¶ 27.

¶ 18 As noted, defendant contends that he satisfied the cause-and-prejudice test for his claim that his 85-year sentence, which included the mandatory firearm sentencing enhancement, violates the proportionate penalties clause of the Illinois Constitution as applied to him. Under the proportionate penalties clause of the Illinois Constitution, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause where "the penalty imposed is 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Clark*, 2023 IL 127273, ¶ 51 (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002)).

¶ 19 The United States Supreme Court in *Miller*, 567 U.S. at 479, held that the eighth amendment to the United States Constitution "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." As the *Miller* court explained, mandatory life sentences without parole preclude a sentencing court from considering a juvenile's

youth and its attendant characteristics before imposing a life sentence on a juvenile offender. *Id.* at 477-78.

¶ 20 The Illinois Supreme Court has since extended and interpreted the *Miller* protections to apply to *de facto* life sentences imposed on juveniles, defined as prison sentences greater than 40 years. *Buffer*, 2019 IL 122327, ¶¶ 41-42. *Miller* protections under the eighth amendment are not implicated in cases of a defendant aged 18 or over, as the age of 18 "marks the present line between juveniles and adults." *People v. Harris*, 2018 IL 121932, ¶¶ 54-61. However, our supreme court has recognized that an "emerging adult" offender between 18 and 19 years of age is not foreclosed from raising an as-applied proportionate penalties clause challenge to a life sentence, premised on the evolving science on juvenile maturity and brain development. *Clark*, 2023 IL 127273, ¶ 87 (citing *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44; *People v. Harris*, 2018 IL 121932, ¶¶ 1, 48).

¶ 21 As an initial matter, we note that the sentencing range for defendant's first degree murder offense was twofold: (1) a discretionary initial sentence between 20 to 60 years (730 ILCS 5/5-4.5-20(a) (West 2000)) and (2) a mandatory 25-year firearm enhancement (730 ILCS 5/5-8-1(d)(iii) (West 2000) (imposing a 25-year enhancement for personally discharging a firearm that proximately caused death to another person)). Thus, defendant's sentence carried a mandatory minimum of 45 years in prison. Defendant was sentenced to 85 years in prison: a discretionary 60-year sentence plus a mandatory 25-year firearm enhancement. Based on the statutory scheme, defendant asserts that he received a "mandatory" *de facto* life sentence. See *Buffer*, 2019 IL 122327, ¶¶ 41-42 (sentence greater than 40 years is a *de facto* life sentence); see also *People v. Reyes*, 2016 IL 119271, ¶¶ 2, 10 (sentence for first degree murder with a 25-year firearm enhancement was a "mandatory, *de facto* life-without-parole sentence").

¶ 22    Defendant relies on the "emerging adult" line of case law as articulated in *Thompson*, 2015 IL 118151, and its progeny in raising his as-applied proportionate penalties challenge to his 85-year prison sentence and explicitly states that he is not raising a *Miller* claim. He argues that he satisfied the cause prong of the cause-and-prejudice test because cases extending *Miller*'s protections to emerging adult offenders were decided after he brought his prior postconviction filings, so he could not have brought the claim until now. Additionally, he asserts that he was prejudiced because he unconstitutionally received a *de facto* life sentence without consideration of his youth and its attendant characteristics. We find that defendant's claim is foreclosed by the recent supreme court decisions in *Clark*, 2023 IL 127273, *People v. Moore*, 2023 IL 126461, and *People v. Hilliard*, 2023 IL 128186.

¶ 23    *Clark*, 2023 IL 127273, concerned a 24-year-old defendant who received a discretionary *de facto* life sentence, more specifically a 90-year prison sentence. Our supreme court affirmed the denial of the defendant's motion for leave to file a successive postconviction petition raising a new proportionate penalties challenge under *Miller* principles. *Id.* ¶¶ 85, 99. The court found that " '*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause' in a successive postconviction petition." *Id.* ¶ 92 (quoting *People v. Dorsey*, 2021 IL 123010, ¶ 74).

¶ 24    The supreme court observed that, prior to *Miller*, Illinois courts had long recognized that the proportionate penalties clause required the circuit court to consider "the defendant's youth and mentality in fashioning an appropriate sentence." (Internal quotation marks omitted.) *Id.* The court explained that the defendant had the "essential legal tools" to raise his proportionate penalties claim prior to *Miller* and when filing his prior postconviction petitions. (Internal quotation marks omitted.) *Id.* ¶ 93. The court held that citing the *Miller* line of cases did not satisfy the cause prong

of the cause-and-prejudice test to raise a proportionate penalties claim in a successive postconviction petition "as *Miller*'s unavailability does nothing to explain why [the] defendant neglected to raise the proportionate penalties clause claim in his prior postconviction proceedings." *Id.* ¶ 94.

¶ 25 Several months after *Clark*, our supreme court decided *Moore*, 2023 IL 126461, which concerned two separate appeals in which 19-year-old defendants each received discretionary life sentences. *Id.* ¶¶ 1, 38. The *Moore* court clarified that, because *Miller* does not "directly apply to young adults," it does not provide cause, for purposes of the cause-and-prejudice test, for a young adult to raise a claim under the proportionate penalties clause. *Id.* ¶ 40.

¶ 26 Even more recently, our supreme court in *People v. Hilliard*, 2023 IL 128186, again addressed an as-applied proportionate penalties clause challenge to a sentence in the context of postconviction proceedings. The defendant in *Hilliard* filed a postconviction petition alleging that the mandatory 25-year firearm enhancement added to his 15-year sentence was unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution in part because he was 18 years old when he committed the offense. *Id.* ¶¶ 23, 27. As a general proposition of law, the court explicitly stated that "[t]he Illinois Constitution does not limit a proportionate penalties challenge to just juveniles" or to individuals with life sentences. *Id.* ¶ 29. As to the defendant's claim, the court found that the defendant's status as an adult distinguished his case from the line of appellate court cases "finding mandatory firearm enhancements unconstitutional as applied under the proportionate penalties clause." *Id.* ¶ 35.

¶ 27 The supreme court reiterated that "emerging adult" defendants between 18 and 19 years old are not foreclosed from raising "as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development" with "respect

to *mandatory* life sentences in *initial* postconviction petitions." (Emphasis in original and internal quotation marks omitted.) *Id.* ¶ 27. The court also reiterated that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause in a successive postconviction petition [citation] and that *Miller* applies to neither discretionary sentences nor adults [citation]." (Internal quotation marks omitted.) *Id.* ¶ 28.

¶ 28   Defendant asserts that *Clark* and *Moore* are distinguishable because the defendants in those cases received discretionary life sentences, whereas defendant received a mandatory *de facto* life sentence. However, the reasoning underlying both cases was that the defendants had the "essential legal tools" to raise a proportionate penalties clause challenge prior to *Miller*. *Id.* ¶ 42; *Clark*, 2023 IL 127273, ¶ 93. As the supreme court emphasized in *Clark* and reiterated in *Hilliard*, while it had previously recognized that emerging adults between 18 and 19 years old were not foreclosed from bringing as-applied proportionate penalties clause challenges, the court's prior decisions "addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions." (Emphasis in original.) *Clark*, 2023 IL 127273, ¶ 88; see *Hilliard*, 2023 IL 128186, ¶ 27.

¶ 29   There is nothing in the reasoning of *Clark* or *Moore* suggesting that, had the defendants in those cases received statutorily mandated life sentences rather than discretionary life sentences, they could have satisfied the cause-and-prejudice test based on newly decided case law, where they could have raised an as-applied proportionate penalties clause challenge to both a mandatory and a discretionary life sentence prior to the *Miller* decision. See *Moore*, 2023 IL 126461, ¶ 42 ("As *Miller* did not change the law applicable to young adults, it does not provide cause for the proportionate penalties challenges advanced in [the defendants'] proposed successive

postconviction petitions."); *People v. Leach*, 2024 IL App (4th) 230298, ¶ 86 ("[N]othing in *Moore* suggested a distinction between discretionary and mandatory sentences."). We therefore disagree with defendant that a distinction between a mandatory and discretionary life sentence establishes cause for not raising a proportionate penalties claim earlier, where the claim existed prior to *Miller*.

¶ 30    In conclusion, as in *Clark* and *Moore*, defendant here was over 18 years old when he committed the offenses. *Clark*, *Moore*, and *Hilliard* specifically held that young adults cannot establish cause under the cause-and-prejudice test on the basis of previously unavailable case law extending *Miller* protections to "emerging adults" under the proportionate penalties clause. We therefore conclude that defendant cannot demonstrate cause for purposes of the cause-and-prejudice test for leave to file a successive postconviction petition.

¶ 31    Based on our finding that defendant failed to show cause, we need not address the issue of whether defendant adequately stated a *prima facie* showing of prejudice. *Miller*, 2023 IL 126461, ¶ 42. Accordingly, the circuit court properly denied defendant's motion for leave to file a successive postconviction petition. See *People v. Vidaurri*, 2023 IL App (1st) 200857, ¶ 75 (finding that, based on *Clark*, the defendant could not establish cause for filing a successive postconviction petition raising a *Miller*-type proportionate penalties claim).

¶ 32    For the foregoing reasons, we affirm the circuit court's denial of leave to file a successive post-conviction petition.

¶ 33    Affirmed.