**2023 IL 126461**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket Nos. 126461, 126932)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
TORY S. MOORE, Appellant.—THE PEOPLE OF THE STATE
OF ILLINOIS, Appellant, v. MARVIN WILLIAMS, Appellee.

_Opinion filed May 18, 2023._

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1     Tory S. Moore and Marvin Williams, both sentenced to life in prison without parole for separate murders committed when they were 19 years old, appealed from judgments denying them leave to file successive postconviction petitions challenging their sentences. The Appellate Court for the Fourth District affirmed the judgment against Moore, and the Appellate Court for the Second District

reversed the judgment against Williams. We granted Moore's petition for leave to appeal and the State's petition for leave to appeal from the appellate court's order in the case against Williams. We consolidated the cases for review. We find neither Moore nor Williams sufficiently pled cause for filing their successive postconviction petitions. We affirm the appellate court's ruling against Moore, reverse the ruling in favor of Williams, and affirm the judgments of the circuit court in both cases.

¶ 2                                    I. BACKGROUND

¶ 3                                        A. Moore

¶ 4                              1. Trial and Direct Appeal

¶ 5      Prosecutors charged Moore with murdering Savoy Brown in 1997. We adopt the following summary from the appellate court's disposition of Moore's direct appeal.

> "Defendant, Andre Sayles, and Chioke Holiday kidnapped at gunpoint Seneca Johnson, James Browning, and Savoy Brown after demanding money and drugs from them. They drove them into an alley where the three were searched, ordered to remove their clothing, and directed back into the car. The three captives were required to ride with their heads between their legs. They were taunted and threatened with being killed. Eventually, Sayles drove the car into a cornfield. The victims were ordered out of the car and to line up in a row facing their captors. Defendant then spun the cylinder of a revolver, pointed it at Browning's head, and pulled the trigger. The revolver did not fire. Defendant then spun the cylinder again, pointed it at Brown's head, and fired. Brown fell, and Johnson and Browning fled. Sayles testified that, after defendant returned from chasing Johnson and Browning, he asked Sayles to get away from Brown, complaining, 'he still ain't dead.' Defendant then fired another shot into Brown." *People v. Moore*, No. 4-99-0451, slip order at 6 (2001) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6      Willie Clemmons, who shared a jail cell with Moore, testified that Moore admitted that he and Holiday picked up three guys to rob them and then took them

to a cornfield to kill them. Moore told Clemmons "he played a game, spinning the cylinder of the gun, pointing it at one of the men, and pulling the trigger to see if it would discharge. The second time, the boy was shot and fell to the ground shaking" before Moore shot him a second time. *Id.* Moore, laughing, then lay on the cell floor mimicking the dying boy's tremors. *Id.*

¶ 7    At the sentencing hearing, the prosecution presented evidence of Moore's prior violent acts. Chez Jones testified that on December 6, 1993, Moore "without provocation pointed [a] gun at Jones' head after cocking the hammer. Immediately before firing, he asked Jones, 'What you got to say now?' Jones was hospitalized for two weeks; endured three surgeries; lost her left eye; and suffered a fractured skull, spinal damage, and facial nerve damage." *Id.* at 7.

¶ 8    Moore's grandmother testified that Moore's father left Moore's mother when Moore was very young, and Moore's father had "been out of the picture ever[ ] since." When Moore was eight or nine, his mother "[g]ot involved in drugs." Moore's older sister, at the age of 11 or 12, "got to be more of the mother" to Moore.

¶ 9    The presentence investigator wrote, "The defendant refused to be interviewed for this report by being non-compliant and belligerent to this officer. Upon this officer advising the defendant that this report had been requested by his attorney and the judge, the defendant advised that this officer could tell the judge to 'f*** off.' "

¶ 10    Moore sought anger counseling in jail before the trial. The counselor testified that Moore's mother was a "drug addict" who "had a succession of boyfriends; and they were physically abusive to her and to [Moore]." The counselor explained:

"[Moore's] history of being physically abused has created unresolved anger with him. He's also grown up seeing anger expressed violently. That's the example that has been set for him. He's grown up with no appropriate male role model, and he's grown up with a mother [who] due to her substance abuse *** has a lot of the time not been able to provide effective parenting. So all of this contributes to this unresolved anger, which if it's not resolved appropriately through therapy will come out inappropriately in a variety of ways including violent behavior."

¶ 11 Two instructors working in the prisoner education programs testified about Moore's classroom conduct and concluded that he had good potential for rehabilitation.

¶ 12 The Macon County circuit court sentenced Moore to life in prison with no possibility of parole. The appellate court affirmed the judgment. *Id.*

### 2. Postconviction

¶ 14 Moore filed a postconviction petition in 2006. The trial court dismissed the petition and again the appellate court affirmed. *People v. Moore*, 379 Ill. App. 3d 1092 (2008) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 15 In 2018, Moore filed a motion for leave to file a successive postconviction petition arguing that his sentence violated both the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). He alleged that he lacked legal support for the challenges until the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), and therefore he had cause for filing a successive petition. He alleged prejudice in that his brain had not fully matured when he committed the murder and that the trial court failed to take into account his immaturity and rehabilitative potential when it sentenced him. The trial court denied the motion for leave to file the successive petition.

### 3. Appellate Court

¶ 17 The appellate court found that Moore failed to allege facts that could support a finding that his brain development at the time of the crime required the court to treat him as a juvenile offender. 2020 IL App (4th) 190528, ¶ 40. The court affirmed the judgment denying Moore leave to file his successive postconviction petition. *Id.* ¶ 43. We granted Moore's petition for leave to appeal.

¶ 18                                    B. Williams

¶ 19                              1. Trial and Direct Appeal

¶ 20        Prosecutors charged Williams with the 1997 murders of Justin Levingston and
       Adrienne Austin. According to the appellate court, LeMual Conley and Antonio
       Trammell testified that they, Williams, and Emmett Wright drove together to the
       victims' house, entered by force, and terrorized the occupants: Levingston, Austin,
       four-year-old Luckia Austin, and Lovenia Hinton. Conley testified that, on the
       previous evening, the four men had agreed to drive to the house to steal marijuana.
       Williams had a gun. Conley grabbed Hinton and told her not to look, and Williams
       and Wright took another woman who was downstairs to the second floor. Conley
       heard one shot, then another. Soon afterward, there were two more shots. Going
       upstairs, Conley saw Levingston lying in the stairwell and Williams standing alone
       in a bedroom. Conley went downstairs, heard two more shots from upstairs, and
       saw Williams come downstairs. Williams wanted to shoot a woman who was
       downstairs, but Conley talked him out of it. The four intruders left. *People v.
       Williams*, 313 Ill. App. 3d 849, 853-54 (2000).

¶ 21        The presentence investigator, describing Williams's background and quoting
       from a prior petition to revoke his probation, reported:

            "According to *** records in the Juvenile Probation Office, [Williams's]
       father played no role in the defendant's upbringing and his mother died of a
       drug overdose in 1989, thus causing him to reside with his maternal
       grandparents ***. *** [T]he defendant's older sister has been convicted of
       misdemeanors in this jurisdiction and *** his older brother currently is serving
       a nine-and-a-half year prison term for Armed Robbery. ***

            ***

            'This family has an unstable history for structure and appropriate
       interactions. The Department of Children and Family Services has had
       involvement with the case as a result of the mother's death, and the children
       have made frequent moves from relative to relative. *** Marvin became more
       disobedient and defiant. Events just prior to the runaway included complaints
       that the minor would not report his whereabouts, did not abide by curfew, and

                                          - 5 -

began spending a good deal of time at his older sister's, where adequate supervision was not available. [Williams's grandmother] also heard rumors that Marvin was becoming involved with alcohol and [drugs], and gang associations as well.' "

¶ 22    A psychologist who produced an evaluation for Williams's probation at age 13, which was included in the presentence investigation for the 1997 murder, wrote:

"[Williams's drawings] reflect[ed] intellectual, perceptual or perceptual-motor deficiencies. *** The figure of the tree was slanting at better than fifteen degrees which suggests insecurity. There was a broad base which suggests his early emotional needs were not met or satisfied. ***

* * *

*** His responses also revealed that he feels vic[ti]mized by his environment and justified in venting his aggressions back towards the environment and those within it. His responses also revealed a rather high level of anxiety, apprehension and concern in respect to his physical well being and some depression associated with these anxieties. There were also indications, however, that he is impulsive and may well react with lowered regards for the needs and feelings of others. ***

* * *

In terms of emotional functioning he reflects general as well as psycho-sexual immaturities. *** He also seems to have problems in terms of identity and, apparently, is attempting to establish some type of 'rep' in the eyes of his peers."

¶ 23    The Winnebago County circuit court "made a finding that a discretionary life sentence was warranted because the offenses exhibited exceptionally brutal and heinous behavior indicative of wanton cruelty." *People v. Williams*, 2020 IL App (2d) 180526-U, ¶ 4 n.1. The trial court sentenced Williams to life in prison with no possibility of parole. The appellate court affirmed the judgment. *Williams*, 313 Ill. App. 3d at 864.

¶ 24                                       2. Postconviction

¶ 25        Williams filed a postconviction petition in 2001. The trial court dismissed the petition, and again the appellate court affirmed the judgment. *People v. Williams*, No. 2-01-0868 (2003) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Williams filed a motion for leave to file a successive postconviction petition in 2017. He cited *Miller* and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), in support of his argument that his sentence violated both the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). He contended the trial court did not adequately consider his mitigating characteristics and background circumstances as a young adult at the time of the murders.

¶ 26        Williams alleged that, when he was 12, he found his mother in their home, dead from a drug overdose. The Department of Children and Family Services separated him from his four siblings, as no relatives agreed to take care of all five of his mother's children. Williams started using alcohol, and he joined a gang not long after his mother's death. Rockford public schools placed him in a program for students with severe behavioral problems. His delinquency history began in 1990, when he was 13, with a conviction for battery. Following his gang's instructions, he later stole his aunt's car.

¶ 27        Williams alleged that, since his incarceration in 1997, he had participated, as far as the prison would allow, in rehabilitative services. He completed several writing courses. The Neighborhood Arts Project published several articles he wrote. Williams also supported his motion for leave to file a successive postconviction petition with several articles reporting on studies of brain development in young adults. The circuit court denied Williams's motion for leave to file the successive postconviction petition.

¶ 28                                       3. Appellate Court

¶ 29        The appellate court found that an objective factor impeded Williams from bringing his constitutional claims based on the reasoning of *Miller* and *Montgomery*, as the United States Supreme Court had not decided *Miller* by the

time Williams filed his initial postconviction petition. *Williams*, 2020 IL App (2d) 180526-U, ¶ 12. The court concluded that Williams made a sufficient *prima facie* showing of cause for raising the arguments about both the United States Constitution and the Illinois Constitution in a successive postconviction petition. *Id.*

¶ 30    The appellate court also held Williams sufficiently alleged prejudice. *Id.* ¶ 18. The court summarized the allegations and noted Williams "included his affidavit, in which he averred to numerous issues with his upbringing, trauma involving his mother's death, gang influences on his life, and his rehabilitative progress in prison. Further, he submitted the PSI, a psychological assessment, and numerous articles regarding criminal justice reform of youthful offenders." *Id.*

¶ 31    We granted the State's petition for leave to appeal and consolidated the appeal with Moore's appeal. We also allowed the Children and Family Justice Center at Northwestern Pritzker School of Law; Cabrini Green Legal Aid; the Center for Law, Brain & Behavior; Chicago Appleseed Center for Fair Courts; Chicago Council of Lawyers; Chicago Lawyers' Committee for Civil Rights; the Civitas Childlaw Center; the Juvenile Justice Initiative; Juvenile Law Center; the Law Office of the Cook County Public Defender; and the National Association of Social Workers to file a joint *amici curiae* brief. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 32                                    II. ANALYSIS

¶ 33    Moore argues that his petition adequately states a *prima facie* case for allowing him to file a successive postconviction petition. The State argues that we should affirm the appellate court's judgment denying Moore leave to file the successive petition. The State also argues that we should reverse the appellate court's judgment allowing Williams to file a successive postconviction petition, because Williams, like Moore, failed to state a *prima facie* case for allowing him to file a successive postconviction petition. We review *de novo* the denial of a motion for leave to file a successive postconviction petition. *People v. Robinson*, 2020 IL 123849, ¶ 39.

¶ 34    The Post-Conviction Hearing Act, which prescribes the pleading standards for successive postconviction petitions, provides:

"(f) Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016).

¶ 35 Section 122-1(f) requires a petitioner to plead facts sufficient to support a finding of both cause and prejudice for each individual claim asserted in a proposed successive postconviction petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 463 (2002). In *People v. Bailey*, 2017 IL 121450, ¶¶ 21-24 (quoting *People v. Smith*, 2014 IL 115946, ¶ 28), the court explained:

" '[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings.' ***

***

*** The motion for leave to file is directed to the court, and it is the court that must decide the legal question of whether a defendant has satisfied the section 122-1(f) requirement of showing cause and prejudice. This is a preliminary screening to determine whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice. [Citation.] In other words, the court must determine whether defendant has made a *prima facie* showing of cause and prejudice."

¶ 36 Both Moore and Williams contend their sentences of life imprisonment without parole violate both the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution. In their motions for leave

to file successive postconviction petitions, both Moore and Williams claimed the decision in *Miller*, 567 U.S. 460, gave them cause for raising new constitutional challenges to their sentences.

¶ 37                              A. Eighth Amendment

¶ 38     The *Miller* court held the eighth amendment prohibits mandatory sentencing of a juvenile to life in prison without parole. *Id.* at 489. As this court said in *People v. Clark*, 2023 IL 127273, ¶ 54, "*Miller* did not prohibit life sentences for juveniles but, instead, held that the eighth amendment required sentencing courts to have discretion in sentencing juveniles after considering the juvenile's youth and the attendant characteristics of youth." *Miller* directly applies only to juveniles. While some of the reasoning of *Miller* could support an argument for extending its holding to young adults, the decision in *Miller* itself makes no such extension. The holding of *Miller* did not change the law applicable to young adults like Moore and Williams. "*Miller*'s unavailability prior to 2012 at best deprived defendant of some helpful support for his [eighth amendment] claim, which is insufficient to establish cause." (Internal quotation marks omitted.) *Id.* ¶ 67. *Miller* also did not change the law applicable to discretionary sentences, even those imposed on juveniles. See *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1314 (2021). Because *Miller* did not change the law applicable to discretionary life sentences imposed on young adults, including the sentences imposed on both Moore and Williams, *Miller* did not give them cause to raise new challenges to their sentences as violations of the eighth amendment. Moore and Williams did not sufficiently plead facts that could support a finding of cause for failing to raise their eighth amendment challenges prior to their proposed successive postconviction petitions.

¶ 39                            B. Proportionate Penalties

¶ 40     In their petitions Moore and Williams argued *Miller* gave them cause to challenge the constitutionality of their sentences under the proportionate penalties clause of the Illinois Constitution, which requires courts to determine all penalties both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11. But " '*Miller*'s announcement of a new substantive rule under the eighth amendment does not

provide cause for a [juvenile offender] to raise a claim under the proportionate penalties clause.' " *Clark*, 2023 IL 127273, ¶ 61 (quoting *People v. Dorsey*, 2021 IL 123010, ¶ 74). As *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause.

¶ 41 In *Clark*, this court held that *Miller* did not establish cause for offenders with intellectual disabilities to raise new challenges to their sentences under the proportionate penalties clause, because "[l]ong before *Miller*, Illinois law recognized the reduced culpability of defendants with intellectual disabilities." *Id.* ¶ 62. Similarly, "long before *Miller*, Illinois law recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause." *Id.* ¶ 61.

¶ 42 The evidence and arguments raised at the sentencing hearings for both Moore and Williams show the parties knew Illinois law recognized the special status of young adults, especially those subject to adverse influences, for purposes of applying the principles of the proportionate penalties clause. "*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders. Instead, defendant had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause when he filed his previous postconviction petitions." (Internal quotation marks omitted.) *Id.* ¶ 93. As *Miller* did not change the law applicable to young adults, it does not provide cause for the proportionate penalties challenges advanced in Moore's and Williams's proposed successive postconviction petitions. Because both Moore and Williams have not sufficiently alleged facts that make a *prima facie* case showing cause for raising their sentencing challenges in successive postconviction petitions, we affirm the decisions of both circuit courts denying the motions for leave to file the successive postconviction petitions. As our ruling on cause disposes of the cases, we do not address the issue of whether Moore and Williams adequately stated a *prima facie* showing of prejudice. See *People v. Brown*, 225 Ill. 2d 188, 207 (2007); see also *Smith*, 2014 IL 115946, ¶ 37.

¶ 43                                    III. CONCLUSION

¶ 44　　　　As *Miller* did not change the law applicable to discretionary sentences imposed on young adult offenders, it does not provide cause for Moore and Williams to file their proposed successive postconviction petitions. We affirm the appellate court's judgment affirming the circuit court's dismissal of Moore's petition for leave to file a successive postconviction petition, and we reverse the appellate court's judgment reversing the circuit court's dismissal of Williams's petition for leave to file a successive postconviction petition.

¶ 45　　　　No. 126461, Affirmed.

¶ 46　　　　No. 126932, Appellate court judgment reversed; circuit court judgment affirmed.