NOTICE

Decision filed 11/07/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230999-U

NO. 5-23-0999

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 03-CF-1384 |
| | ) | |
| LAMONTE DIXON, | ) | Honorable |
| | ) | Chad S. Beckett, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the defendant failed to make a *prima facie* showing of cause for his failure to bring his proportionate-penalties claim in his initial postconviction proceeding, and any argument to the contrary would lack merit, the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court, denying the defendant's motion for leave to file a successive postconviction petition, is affirmed.

¶ 2    The defendant, Lamonte Dixon, appeals from an order of the circuit court that denied his motion for leave to file a successive postconviction petition. The defendant had sought to raise a claim that his 65-year prison sentence, as applied to him, violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because, at the time he committed his crime, he was only 19 years old, and his brain was more like that of an adolescent than an adult. The circuit court found that the defendant had failed to show cause for his failure to raise this claim

1

in his first postconviction proceeding. The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal has no merit. On that basis, OSAD has filed in this court a motion for leave to withdraw as counsel under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a memorandum of law in support of the motion. OSAD gave proper notice to the defendant. This court granted the defendant sufficient time to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw as counsel, or why this appeal has merit. The defendant has not filed any type of response. Having examined OSAD's *Finley* motion and supporting memorandum, as well as the pertinent portions of the record on appeal, this court agrees with OSAD's assessment of this appeal. The *Finley* motion is granted, and the judgment of the circuit court, denying the defendant's motion for leave, is affirmed.

¶ 3                                    BACKGROUND

¶ 4       In 2003, the defendant shot and killed a young woman in Champaign County. The defendant was 19 years and 3 months old at the time of the offense. In February 2004, a jury found the defendant guilty of first degree murder. See 720 ILCS 5/9-1(a) (West 2002).

¶ 5       The offense of first degree murder was punishable by imprisonment for a term of 20 to 60 years. 730 ILCS 5/5-8-1(a)(1)(a) (West 2002). If the defendant personally discharged a firearm that proximately caused the death, 25 years to natural life shall be added to the term of imprisonment. *Id.* § 5-8-1(a)(1)(d)(iii).

¶ 6       The presentence investigation report (PSI) prepared in this case showed that the defendant was seven years old when he was taken into protective custody by the Department of Children and Family Services (DCFS) due to allegations of neglect. Subsequently, DCFS was granted guardianship of the defendant. His mother's and his father's parental rights were terminated two

2

or three years after DCFS first took protective custody of the defendant. Between the ages of 7 and 18, the defendant had many foster-care placements, and spent time in various residential treatment facilities and the Illinois Department of Corrections. The defendant "rarely stay[ed] in any single placement for any significant period of time due to his aggressive behavior."

¶ 7    In April 2004, the circuit court held a sentencing hearing. A correctional officer at the Champaign County jail testified that the defendant, a few weeks prior and without provocation, had struck him in the mouth, cutting the officer's lip. The State highlighted the defendant's history of criminality, delinquency, and violence, and it suggested that the defendant was highly likely to commit additional crimes in the future. The State recommended a 60-year prison term plus the mandatory 25-year enhancement, for a total term of 85 years.

¶ 8    The defendant's public defender did not present evidence at sentencing. In his argument, the public defender highlighted the defendant's horrific and chaotic childhood. The public defender relied heavily on a psychological evaluation of the defendant that was prepared by licensed clinical psychologist Marty Traver, Ph.D., in 1991, when the defendant was just seven years old and in the custody of DCFS. Dr. Traver's report was quoted in the PSI, and it was read during the hearing, stating,

> "In this evaluator's opinion, [the defendant] has been severely abused, and his physical and emotional needs were not met. [The defendant] has no role model for his appropriate behavior. *** His acting out behaviors coupled with his occasional suicidal thoughts could lead to serious violence and perhaps the death of another if he does not receive immediate help. In this evaluator's opinion, time is of the essence as this boy appears to have no conscience. In this case, counseling would

3

not help this boy unless it takes place in the context of his residential setting where rules and expectations are clear."

The public defender recommended a 20-year prison term plus the mandatory 25-year enhancement, for a total term of 45 years, which was the minimum sentence allowed.

¶ 9 For his part, the defendant himself submitted to the sentencing court "a thirteen page documentary [*sic*]" and asked the court to consider it. The court read the document and made it part of the record. This 13-page document was a psychological evaluation of the defendant written by Dr. Traver in 2001, when the defendant was 17 years old and incarcerated at the Illinois Youth Facility. According to this 2001 report from Dr. Traver, the defendant had been prostituted by his own mother, "a cocaine addict," to men who gave the mother drugs in exchange for access to her son. Oftentimes, there was no food in their house. After DCFS removed the defendant from his mother's house, he was shuffled from one residential placement to another. The defendant had "a history of violent and aggressive behavior since early childhood." When Dr. Traver interviewed the defendant, his judgment "appeared poor due to extreme immaturity and impulsivity." Dr. Traver diagnosed the defendant with "conduct disorder," and she opined that once the defendant reached the age of 18, he would be diagnosed with antisocial personality disorder.

¶ 10 The circuit court considered the two reports by Dr. Traver and the other evidence relating to the defendant's background as mitigating evidence. According to the court, the defendant's childhood could best be characterized as "awful, terrible." Nevertheless, the court stated, it did not have the power to change the defendant's past, and it was faced with determining a punishment for "the violent, unstable individual" that the defendant had become. The court found that life imprisonment would not be appropriate. Instead, it imposed a sentence of imprisonment for a term of 40 years plus the 25-year enhancement, for a total term of 65 years.

4

¶ 11    On direct appeal, the defendant, by and through his appointed counsel, OSAD, presented arguments directed against the 25-year sentence enhancement. The Appellate Court, Fourth District, rejected all of his arguments and affirmed the judgment of conviction. *People v. Dixon*, 359 Ill. App. 3d 938 (2005).

¶ 12    In 2005, the defendant filed his initial petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2004)). The circuit court appointed postconviction counsel for the defendant, and postconviction counsel filed amendments to the petition. The State filed a motion to dismiss, plus amendments. In 2006, the court held a hearing on the State's motion and heard the parties' arguments. The court granted the State's motion and dismissed the defendant's postconviction petition. None of the various pleadings and motions, or their amendments, is included in the record currently before this court. However, the transcript of the motion hearing is a part of the instant record, and it strongly suggests that no issue concerning the defendant's sentence was raised in his initial postconviction proceeding.

¶ 13    On April 29, 2022, the defendant filed a motion for leave to file a successive postconviction petition. The motion for leave was accompanied by the proposed successive petition. In the proposed petition, the defendant claimed that his 65-year prison sentence, which he characterized as a "*de facto* life sentence," violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The defendant stated that because he was 19 years, 3 months old at the time of the offense, he was a "young adult" offender at the time of his offense though "not a juvenile," and therefore the circuit court needed to hold a hearing to determine whether he, at the time of the crime, was neurologically and developmentally more like a juvenile or an adult. If he were found to be developmentally more like a juvenile than an adult at the time of the offense, he would be entitled to a new sentencing hearing, he concluded. For his claim, the defendant relied

on *Miller v. Alabama*, 567 U.S. 460 (2012), wherein the United States Supreme Court held that the eighth amendment to the United States Constitution forbids a mandatory sentence of life imprisonment without possibility of parole for a juvenile offender, *i.e.*, for an offender who was under the age of 18 at the time of his crime. *Id.* at 465, 479. The defendant also relied on other post-*Miller* cases from Illinois courts, such as *People v. Buffer*, 2019 IL 122327 (the eighth amendment's prohibition on cruel and unusual punishments forbids the imposition of a prison sentence for a term of more than 40 years—"a *de facto* life sentence"—for a juvenile offender).

¶ 14    In the motion for leave to file the proposed successive petition, the defendant stated that the cause for his failure to bring the claim in his initial postconviction proceeding was that his "status as a young adult & *de facto* life sentencing 'as applied' proportionate penalties clause challenge did not exist at the time [the defendant] was tried, convicted, & sentenced." Prejudice for that failure was his sentence as a young adult to a *de facto* life sentencing in violation of due process of the proportionate penalties clause. Ill. Const. 1970, art. I, § 2.

¶ 15    Attached to the proposed postconviction petition were the sentencing hearing transcript from April 2004, the mittimus, the PSI, and Dr. Traver's psychological evaluation of the defendant from 2001, when the defendant was 17. The defendant later filed his GED certificate and other certificates he had earned while imprisoned. These certificates apparently were submitted to show the defendant's progress toward rehabilitation.

¶ 16    The circuit court took the motion for leave under advisement until the Illinois Supreme Court decided the cases of *People v. Moore*, 2020 IL App (4th) 190528, and *People v. Williams*, 2020 IL App (2d) 180526-U, which the court thought raised issues similar to those raised by the defendant. On May 18, 2023, our supreme court issued an opinion in those two cases, which were consolidated under *People v. Moore*, 2023 IL 126461. On September 5, 2023, the court relied on

*Moore*, finding that the defendant had failed to make a *prima facie* showing of cause for not raising his proportionate-penalties challenge earlier, and therefore denying his motion for leave. The defendant timely filed a notice of appeal.

¶ 17                                    ANALYSIS

¶ 18    This appeal is from the circuit court's order that denied the defendant's motion for leave to file a successive postconviction petition. This court reviews *de novo* the denial of a motion for leave. *People v. Robinson*, 2020 IL 123849, ¶ 39. Our supreme court's opinion in *People v. Moore*, 2023 IL 126461, was consequential in determining that the defendant could not raise the proportionate-penalties challenge to his sentence that was contained in his proposed successive postconviction petition. The judgment is affirmed.

¶ 19    The Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) permits a criminal defendant to challenge the proceedings that resulted in his conviction by asserting that "there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." *Id.* § 122-1(a)(1). The Postconviction Act contemplates the filing of a single postconviction petition. *Robinson*, 2020 IL 123849, ¶ 42. A defendant must obtain leave of court to file a successive postconviction petition. 725 ILCS 5/122-1(f) (West 2022); *Robinson*, 2020 IL 123849, ¶ 43. To obtain leave, the defendant must demonstrate cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding, or he must present a claim of actual innocence. *Robinson*, 2020 IL 123849, ¶ 42.

¶ 20    In the instant case, the defendant attempted to demonstrate cause and prejudice for his failure to assert his postconviction claim earlier. Section 122-1(f) of the Postconviction Act explains how cause and prejudice are shown:

7

"(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2022).

Both cause and prejudice must be demonstrated in order to obtain leave of court; if a defendant fails to show either element, he will not be granted leave. *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002). However, the defendant needs to make only a *prima facie* showing of cause and prejudice. *People v. Bailey*, 2017 IL 121450, ¶ 24.

¶ 21    The defendant's initial postconviction proceeding was in 2005-2006. He filed his motion for leave to file a successive petition, along with his proposed successive petition, in April 2022. The defendant sought to raise a claim that his 65-year prison sentence, as applied to him, violated the proportionate penalties clause. He argued that his cause for not raising his postconviction claim in the initial proceeding was that the claim did not exist at the time he was tried, convicted, and sentenced.

¶ 22    The proportionate penalties clause of the Illinois Constitution mandates: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const.1970, art. I, § 11. One way in which a statute violates the proportionate penalties clause is if "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." (Internal quotation marks omitted.) *People v. Hilliard*, 2023 IL 128186, ¶ 20. It was under this standard that the defendant challenged his sentence, although he did not say so explicitly.

8

¶ 23   In *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that the eighth amendment to the United States Constitution (U.S. Const., amend. VIII), with its prohibition on cruel and unusual punishments, "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 465, 479; see also *People v. Clark*, 2023 IL 127273, ¶ 54 ("*Miller* did not prohibit life sentences for juveniles but, instead, held that the eighth amendment required sentencing courts to have discretion in sentencing juveniles after considering the juvenile's youth and the attendant characteristics of youth.").

¶ 24   In regard to the instant defendant's proposed postconviction claim, " '*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a [juvenile offender] to raise a claim under the proportionate penalties clause.' " *Clark*, 2023 IL 127273, ¶ 61 (quoting *People v. Dorsey*, 2021 IL 123010, ¶ 74). Since *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause. *Moore*, 2023 IL 126461, ¶ 40.

¶ 25   *Moore* concerned two defendants whose cases were consolidated by our supreme court. Both defendants had a bad, unstable childhood, somewhat similar to the instant defendant's. *Id.* ¶¶ 8, 10, 21, 22. The defendants each committed first degree murder at the age of 19 (*id.* ¶ 1)—the same offense at the same age, as the defendant here. The defendants were each sentenced to life imprisonment without the possibility of parole. *Id.* Both defendants appealed from the judgment of conviction, but the appellate court affirmed *(id.* ¶¶ 12, 23), filed an initial postconviction petition that was dismissed, and the dismissal was affirmed by the appellate court. *Id.* ¶¶ 14, 25. Then, both defendants filed a motion for leave to file a successive postconviction petition and cited *Miller v. Alabama*, claiming that his life sentence violated, *inter alia*, the proportionate penalties clause of the Illinois Constitution. Both defendants argued that the sentencing court had not given

individualized attention to his circumstances as a young adult at the time of the crime. *Id.* ¶¶ 15, 25. The approach taken by the defendants in their motions for leave to file successive postconviction petitions was similar to the case at hand.

¶ 26 Our supreme court in *Moore* discussed the scenario of a young adult offender who sought to challenge his sentence under the proportionate penalties clause:

"In *Clark*, this court held that *Miller* did not establish cause for offenders with intellectual disabilities to raise new challenges to their sentences under the proportionate penalties clause, because '[l]ong before *Miller*, Illinois law recognized the reduced culpability of defendants with intellectual disabilities.' [*Clark*, 2023 IL 127273,] ¶ 62. Similarly, 'long before *Miller*, Illinois law recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause.' *Id.* ¶ 61.

The evidence and arguments raised at the sentencing hearings for both [defendants] show the parties knew Illinois law recognized the special status of young adults, especially those subject to adverse influences, for purposes of applying the principles of the proportionate penalties clause. '*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders. Instead, defendant had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause when he filed his previous postconviction petitions. (Internal quotation marks omitted.) *Id.* ¶ 93. As *Miller* did not change the law applicable to young adults, it does not provide cause for the proportionate penalties challenges advanced in [defendants'] proposed successive postconviction petitions. Because both [defendants] have not

10

sufficiently alleged facts that make a *prima facie* case showing cause for raising their sentencing challenges in successive postconviction petitions, we affirm the decisions of both circuit courts denying the motions for leave to file the successive postconviction petitions. As our ruling on cause disposes of the cases, we do not address the issue of whether [defendants] adequately stated a *prima facie* showing of prejudice. See *People v. Brown*, 225 Ill. 2d 188, 207 (2007); see also [*People v.*] *Smith*, 2014 IL 115946, ¶ 37." *Id.* ¶¶ 41, 42.

¶ 27 In the instant case, too, the defendant attempted to argue that *Miller* and related Illinois cases had somehow changed the law regarding proportionate-penalties challenges to the sentences of young adult offenders. As *Moore* makes clear, *Miller* did not change that law. In fact, *Moore* forecloses the defendant's constitutional challenge under *Miller*, as the circuit court found. The instant defendant had "the essential legal tools to raise his present proposed claim under the proportionate-penalties clause" (*id.* ¶ 42) during his initial postconviction proceeding in 2005-2006. Indeed, the defendant had the essential legal tools to present a case for his reduced criminal culpability at the time of his sentencing as a young adult in April 2004. The defendant's childhood was a key part of the defendant's argument at sentencing and a factor in the court's individualized determination of his sentence.

¶ 28 Since *Miller* did not change the law applicable to young adults, it did not provide cause for the proportionate penalties challenges advanced in the defendant's proposed successive postconviction petition. Because the defendant did not sufficiently allege facts that made a *prima facie* showing of cause for raising his sentencing challenge in a successive postconviction petition, this court affirms the decision of the circuit court denying the motion for leave to file a successive postconviction petition. As this court's ruling on cause disposes of the case, the issue

11

of whether the defendant adequately stated a *prima facie* showing of prejudice need not be addressed.

¶ 29                                       CONCLUSION

¶ 30     The circuit court did not err in denying the defendant leave to file a successive postconviction petition, for the defendant failed to show cause for his failing to bring his claim in his first postconviction proceeding. No argument to the contrary would have arguable merit. Consequently, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court, denying the defendant leave to file a successive postconviction petition, is affirmed.


¶ 31     Motion granted; judgment affirmed.