NOTICE
Decision filed 11/04/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230682-U

NO. 5-23-0682

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 00-CF-16 |
| | ) | |
| QUINELLA R. THOMPSON, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Presiding Justice McHaney and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's denial of the defendant's successive postconviction petition is affirmed where the defendant failed to establish cause for not raising her youth-based proportionate penalties challenge in an earlier proceeding.

¶ 2    Following a third-stage evidentiary hearing under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), the trial court denied the amended successive postconviction petition filed by the defendant, Quinella Thompson. The defendant appeals, arguing that the trial court erred in determining that the defendant failed to establish cause for not raising her claims in her initial postconviction petition. The defendant also contends that the trial court erred in rejecting her proportionate penalties claim based on a misapprehension that she had adduced no evidence connecting the emerging research in juvenile brain science and her specific circumstances. For the reasons that follow, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      In October 2002, the defendant was convicted by a jury of first degree murder for her role in the murder of an 80-year-old woman. The trial court subsequently sentenced her to 45 years in prison. The defendant was 18 years old at the time of the offense. On direct appeal, the defendant contended, in pertinent part, that her 45-year sentence was excessive in light of, among other things, her youth. See *People v. Thompson*, No. 5-03-0300 (2004) (unpublished order under Illinois Supreme Court Rule 23). This court disagreed and affirmed the sentence as modified after correcting the mittimus to reflect the time she spent in presentencing incarceration. *Id.*

¶ 5      On November 2, 2007, the defendant filed a *pro se* postconviction petition, which indicated that she was making an actual innocence claim, but she identified numerous violations of her rights that occurred at the trial. On January 3, 2008, the trial court dismissed the defendant's *pro se* petition as frivolous and patently without merit. This court affirmed the summary dismissal of the defendant's *pro se* petition. See *People v. Thompson*, No. 5-08-0053 (2010) (unpublished order under Illinois Supreme Court Rule 23). On November 24, 2020, the defendant filed a second *pro se* petition for postconviction relief, arguing that her sentence violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). On December 15, 2020, the trial court entered an order, granting the defendant 60 days to amend her postconviction petition to seek leave of court to file a successive petition and to allege that she had satisfied the cause and prejudice test required for successive postconviction petitions under section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2018)).

¶ 6      On January 15, 2021, the defendant filed a *pro se* motion for leave to file a successive postconviction petition along with a successive petition for postconviction relief, in which she argued that her 45-year sentence amounted to an unconstitutional *de facto* life sentence where it

2

was imposed without consideration of the mitigating characteristics of youth, as set forth in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. The defendant argued that her 45-year sentence violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). As for the cause and prejudice test, the defendant argued that she established cause because the substantive rule announced in *Miller* was unavailable to her at the time she filed her first postconviction petition. The defendant further argued that she established prejudice because the recent developments in the law applied retroactively on collateral review, and there was a reasonable probability that she would have received a lesser sentence had the trial court considered the mitigating circumstances of youth.

¶ 7    On January 28, 2021, the trial court entered an order, finding that the defendant had established the cause and prejudice required for successive postconviction petitions. The trial court also appointed counsel for the defendant and docketed the case for second stage postconviction proceedings. On June 10, 2021, the defendant filed an amended successive petition for postconviction relief, setting forth the same arguments as alleged in her *pro se* petition that, under *Miller* and related Illinois authority, her 45-year sentence was an unconstitutional *de facto* life sentence under the Illinois proportionate penalties clause and the eighth amendment of the United States Constitution.

¶ 8    In the amended petition, the defendant acknowledged that, at sentencing, the trial court considered her rehabilitative efforts while in jail. However, she noted that the trial court did not consider the characteristics of youth addressed in *Miller* or how those characteristics affected her conduct in this case. Specifically, the defendant asserted that the following information was not considered: she had a difficult childhood in that she was in the foster care system because her

3

father was murdered when she was 5 years old, and her mother was a drug addict; she suffered from undiagnosed mental health issues and was suicidal when she was approximately 12 years old; she only attended school until the seventh grade; and at the time of the offense, she was in a physically abusive relationship, which led to her conviction. Attached to the defendant's petition was her May 18, 2021, affidavit, in which she provided details about her childhood and her rehabilitative efforts while incarcerated. Also, in support, the defendant's amended petition pointed to a 2015 Washington Post opinion piece and discussions in relevant case law about the recent developments in scientific research on continued brain development in adolescents and young adults.

¶ 9    Further, specifically regarding the defendant's argument that her sentence violated the eighth amendment, the defendant acknowledged that the supreme court had unambiguously drawn the line for *Miller*-based claims under the eighth amendment at age 18. However, she argued that the line should not be arbitrarily set at 18 and that the eighth amendment should also apply to *Miller*-based claims brought by emerging adult offenders.

¶ 10    On February 9, 2022, the State filed a motion to dismiss the defendant's amended successive petition for postconviction relief, arguing that the defendant failed to make a sufficient showing that the recent developments in scientific research about emerging adults specifically applied to her. That same day, the trial court held a hearing on the State's motion, at which the trial court noted that the relevant case law was not very clear as to what evidence needed to be shown at the second stage of the postconviction proceedings. However, the trial court found that the case law mandated that a defendant be given an opportunity to develop an evidentiary record on this issue. Thus, the trial court advanced the proportionate penalties claim to the third stage to allow the defendant an evidentiary hearing on that claim. However, the trial court granted the

4

State's motion to dismiss with regard to the defendant's eighth amendment claim, noting that the case law made it clear that *Miller*-based claims under the eighth amendment did not apply to emerging adult offenders. Thereafter, the trial court entered a written order, granting the State's motion to dismiss as to the defendant's claim based on the eighth amendment but denying the motion regarding the proportionate penalties claim.

¶ 11     On October 20, 2022, the trial court entered an order, indicating that the parties had stipulated that the trial court would consider and take judicial notice of Dr. James Garbarino's testimony on January 11, 2023, in the defendant's case. The trial court noted that Dr. Garbarino's testimony was limited to the general scientific principles of brain development in young adults and would not be specific to the defendant.

¶ 12     At the January 11, 2023, hearing, Dr. Garbarino, who was testifying as an expert witness in developmental psychology and trauma, testified about the general scientific principles of brain development in young adults. Dr. Garbarino testified that there had been considerable discussion about when adolescence ended and the concept of emerging adulthood in the "last couple of decades to deal with the fact" that there was a transitional period between being a juvenile and reaching "full adulthood." He explained that emerging adulthood was from age 18 to some point in the 20s. He also explained that technological developments had allowed for the direct study of human brains. As the technology became more available and "increasingly applied to studying populations of normal or relatively normal individuals," that led to a "situation where a neuroscience [was] informing developmental psychology about adolescence and emerging adulthood in a way that [was] historically new."

¶ 13     Dr. Garbarino explained that brain development was a gradual process and full maturity could not be presumed until about age 25. He then discussed various publications that articulated

the underlying scientific foundation for giving special sentencing protections to juveniles and increasingly to emerging adults. He indicated that he did not believe that the details of the offense had "any predicative value for later on." He explained the various aspects of brain development and brain structure that were still maturing at age 18; about how chronic trauma and/or adverse environmental conditions could impair that development; about how the mitigating sentencing factors relevant to a juvenile's youth and its attendant circumstances, which were established in *Miller*, applied to emerging adults; and about how brain structure and access to education impacted rehabilitation. Dr. Garbarino also explained the concept of the "double whammy" where many of these emerging adults had normal adolescence limitations while living in a socially toxic environment, which undermined their prosocial development and slowed down the developmental process. Dr. Garbarino concluded that the *Miller* factors should be applied to emerging adult offenders and that there had been additional data and science related to 18- to 20-year-olds since *Miller*.

¶ 14    Subsequently, at the August 22, 2023, third-stage evidentiary hearing, the defendant testified that she was currently 42 years old and that she was 18 years and 8 months old at the time of the offense. The defendant had met with Dr. Garbarino and also reviewed the report that he had prepared as a result of her conversations with him. However, the report was not introduced into evidence, and Dr. Garbarino never testified about the defendant's specific circumstances. The defendant testified about her childhood, noting that she was in foster care due to her mother's substance abuse issues, that she was not close to her biological family, and that she did not have a close group of friends. She explained that she was angry, confused, and lacked direction. Also, since she was living in other people's homes, she never felt like she belonged. She only attended school until the seventh grade. Shortly before her incarceration, she transitioned from a group

6

home into a transitional learning program. She did not appreciate the consequences of committing the offense because she did not appreciate her life.

¶ 15    In comparison, post-incarceration, the defendant was calmer, was better at communicating, was not as angry, had reestablished her relationship with God, and viewed life differently and wanted better for herself. During the prosecution, she had difficulty communicating with her attorney. She explained that her attorney only talked to her about her court appearances, so she did not know what to expect. She also noted that she did not understand what she was fully dealing with because she was young, did not know how to communicate, and was scared.

¶ 16    Also on August 22, 2023, the defendant's attorney filed a certificate demonstrating compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Thereafter, on September 1, 2023, the trial court entered an order, denying the defendant's amended successive petition for postconviction relief. First, the trial court found that the defendant failed to present any expert testimony corroborating her contention that her brain was not fully developed or that she was more akin to a juvenile than an adult at the time of the offense. The trial court concluded that, without this testimony, the defendant was unable to meet her burden of establishing that she was entitled to the *Miller* protections at sentencing.

¶ 17    Second, the trial court found that the case was governed by the supreme court's decision in *People v. Moore*, 2023 IL 126461, ¶¶ 1, 42, which found that *Miller* did not give the defendants, who were 19 years old at the time of the offense, cause to raise successive postconviction claims under the proportionate penalties clause of the Illinois Constitution. In making this decision, the trial court acknowledged that it had previously found that the defendant had established cause and prejudice, and permitted the defendant to file a successive postconviction petition, because none of the cases recognizing the unique status of emerging adults, or the evolving science on juvenile

7

maturity and brain development, were in existence when the defendant filed her initial postconviction petition. However, following that determination, *Moore* had made it clear that *Miller* did not provide cause for a defendant advancing a proportionate penalties challenge in a successive postconviction petition. Consequently, for that reason, as well as the fact that the defendant had failed to meet her burden establishing that she was entitled to *Miller* protections, the trial court denied the defendant's amended successive postconviction petition. The defendant appeals.

¶ 18                                    II. ANALYSIS

¶ 19    The Act allows an incarcerated defendant to challenge her conviction by asserting that her conviction was the result of a substantial denial of her constitutional rights. 725 ILCS 5/122-1 (West 2022). The Act is not a substitute for an appeal, but rather, a collateral attack on the final judgment. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act sets forth a three-stage process for adjudicating a defendant's claims. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). At the first stage, the circuit court independently reviews the petition to determine whether it is frivolous or is patently without merit. *Id.*; 725 ILCS 5/122-2.1 (West 2022). If the petition is not dismissed for being frivolous or patently without merit, it advances to the second stage of the proceedings, at which an indigent defendant is entitled to appointed counsel, the petition may be amended, and the State may answer or move to dismiss. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996); 725 ILCS 5/122-5 (West 2022). At this stage, the trial court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. If no showing is made, the petition is dismissed. *Id.* However, if a substantial showing of a constitutional violation is made, the petition advances to the third stage, and the trial court conducts an evidentiary hearing. *Id.*

8

¶ 20    The Act contemplates the filing of only one postconviction petition. 725 ILCS 5/122-1(f) (West 2022); *Edwards*, 2012 IL 111711, ¶ 22. Accordingly, issues that could have been but were not presented in an original or amended petition are forfeited, and issues that have previously been raised and addressed on appeal will be barred pursuant to *res judicata*. *People v. Tate*, 2012 IL 112214, ¶ 8. However, the procedural bars of forfeiture and *res judicata* can be overcome where fundamental fairness requires. *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002). In proceedings under the Act, fundamental fairness is established by satisfying the cause and prejudice test, which is codified in the Act. *Id.*; 725 ILCS 5/122-1(f) (West 2022).

¶ 21    To obtain leave of court to file a successive postconviction petition, the defendant must demonstrate cause for her failure to raise the claim in the initial petition and prejudice from that failure. 725 ILCS 5/122-1(f) (West 2022). For cause, the defendant must identify an objective factor that impeded her ability to raise a specific claim during the earlier postconviction proceedings. *Pitsonbarger*, 205 Ill. 2d at 460. For prejudice, the defendant must demonstrate that the claim not raised during the initial postconviction proceedings so infected the trial that the resulting conviction or sentence violates her due process rights. *People v. Wrice*, 2012 IL 111860, ¶ 48. Failure to state either cause or prejudice will be detrimental to a motion seeking leave to file a successive petition. *People v. Clark*, 2023 IL 127273, ¶ 47. A defendant should be denied leave of court to file a successive postconviction petition when it is clear, from a review of the successive petition and the submitted documentation, that the claims alleged by the defendant fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 22    Here, on appeal, the defendant challenges the trial court's finding that she failed to establish cause and prejudice. Since the time that the trial court advanced the defendant's proportionate

9

penalties claim to the third stage of the postconviction proceedings, case law has continued to evolve in a manner that has significantly limited defendants' ability to raise youth-based challenges to their sentences in successive postconviction petitions. Thus, in light of the supreme court's decisions in *People v. Dorsey*, 2021 IL 123010, *People v. Clark*, 2023 IL 127273, and *People v. Moore*, 2023 IL 126461, we are compelled to conclude that the defendant cannot establish the requisite cause for failing to bring her proportionate penalties claim in her initial postconviction petition.

¶ 23    In *People v. Dorsey*, our supreme court held that, although *Miller* announced a new substantive rule under the eighth amendment, *Miller* did not provide cause for a juvenile offender to raise a claim under the proportionate penalties clause. *Dorsey*, 2021 IL 123010, ¶ 74. In making this decision, the supreme court reasoned that "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing." *Id.* Accordingly, the supreme court concluded that, at best, *Miller*'s unavailability prior to 2012 "deprived defendant of some helpful support for his state constitutional law claim, which is insufficient to establish cause." (Internal quotation marks omitted.) *Id.* The supreme court then relied on *Dorsey* in *Clark*, when it extended its holding to successive postconviction claims based on a defendant's intellectual disabilities. *Clark*, 2023 IL 127273, ¶¶ 66-67. In *Clark*, the supreme court concluded that the unavailability of *Miller* did not impede the defendant's ability to present his proportionate penalties claim on direct appeal or his opportunity to raise the claim in his first postconviction petition. *Id.* ¶ 67.

¶ 24    Shortly after *Clark*, in *Moore*, our supreme court held that young adult offenders could not rely on the unavailability of *Miller* to establish the requisite cause for their failure to raise their youth-based proportionate penalties challenges in the original postconviction proceedings. *Moore*,

10

2023 IL 126461, ¶¶ 40-42. The supreme court concluded that *Miller* did not directly apply to young adults and thus did not provide cause for a young adult offender to raise a proportionate penalties clause claim. *Id.* ¶ 40. The supreme court reiterated that, "long before *Miller*, Illinois law recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause." (Internal quotation marks omitted.) *Id.* ¶ 41. Moreover, the supreme court noted that the evidence and arguments raised at the defendants' sentencing hearings showed that the parties knew Illinois law recognized the special status of young adults. *Id.* ¶ 42.

¶ 25    The supreme court found that, "*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders. Instead, [the] defendant had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause when he filed his previous postconviction petitions." (Internal quotation marks omitted.) Accordingly, the supreme court concluded that, since *Miller* did not change the law applicable to young adults, it did not provide cause for the proportionate penalties challenges advanced by the defendants in their successive postconviction petitions. *Id.*

¶ 26    In an attempt to circumvent our supreme court's precedent, the defendant here contends that she is not relying on the unavailability of *Miller* as the sole cause for her failure to raise her proportionate penalties claim earlier. Instead, she asserts that she is relying on the subsequent neuroscientific research regarding the development of the brains of young adult offenders that has become available following the *Miller* decision. This new evidence includes Dr. Garbarino's testimony about the emerging research on the maturation of the brain structure and brain development and how that impacts a young adult's thought process and rehabilitative potential. In addition, her amended postconviction petition mentions a 2015 Washington Post opinion piece and relevant case law that discusses brain development and the similarities between adolescents

11

and young adults. Thus, the defendant argues that, without the essential factual and evidentiary support for her youth-based proportionate penalties claim, she was unable to bring the claim in her initial postconviction petition.

¶ 27    Moreover, the defendant argues that, unlike in *Moore*, where the evidence and arguments raised at the sentencing hearing indicated that the parties knew Illinois recognized the special status of young adults, the defendant's sentencing hearing demonstrated the opposite. Specifically, the defendant contends that the only mention of her age at her sentencing hearing was the suggestion, made by her counsel, that where the victim had lived a full life, the State's requested 50-year sentence would effectively end the defendant's life.

¶ 28    However, even before the defendant filed her *pro se* postconviction petition in 2007, it was already accepted, and recognized by Illinois courts, that fully developed adults were different from young adults who were still developing. See *People v. Haines*, 2021 IL App (4th) 190612, ¶ 51. Thus, although the new evidence cited by the defendant provides "some helpful support" for her proportionate penalties claim, the defendant already had "the essential legal tools" for raising it when she filed her initial postconviction petition. See *Dorsey*, 2021 IL 123010, ¶ 74; see also *Moore*, 2023 IL 126461, ¶ 42. For newly discovered evidence to constitute cause, the lack of that evidence must have impeded the defendant's ability to raise the claim at an earlier proceeding. However, *Dorsey*, *Clark*, and *Moore* all instruct that the claim at issue here "should be viewed as nothing more than an extension of proportionate penalties claims that have existed all along." *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62 (citing *Dorsey*, 2021 IL 123010, ¶ 74, *Clark*, 2023 IL 127273, ¶¶ 92-93, and *Moore*, 2023 IL 126461, ¶¶ 40-42). Thus, although the fact that *Miller* and the emerging research following *Miller* arguably gives the defendant a stronger

12

argument today than she had when she filed her initial postconviction petition, it is insufficient to demonstrate cause according to *Moore*.

¶ 29 Accordingly, since we are bound by our supreme court's decisions regarding age-based proportionate penalties challenges for young adults, we find that the defendant did not demonstrate cause for her *Miller*-based proportionate penalties claim. As our ruling on cause disposes of the case, we need not address the issue of whether the defendant established prejudice. We also need not address the defendant's additional argument that the trial court incorrectly rejected her proportionate penalties claim based on a misapprehension that she had adduced no evidence connecting the juvenile brain science research to her character and her specific circumstances.

¶ 30                                    III. CONCLUSION

¶ 31 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 32 Affirmed.